**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GREGORY MILTON,** | : | **CIVIL NO. 1:CV-04-1586** |
| **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **M.E. RAY, ET AL.,** | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

Petitioner, Gregory Milton ("Milton") commenced this *Bivens*[1] civil rights action on July 21, 2004. (Doc 1). The action is presently proceeding *via* an amended complaint, which was filed on August 26, 2004. (Doc. 7). Presently ripe for disposition is Defendants' motion to dismiss, or in the alternative for summary judgment. (Doc. 20). For the reasons set forth below, the Defendants' motion for summary judgment will be granted.

I. Standard of Review.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. FED.R.CIV P 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. FED.R.CIV P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id., quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

II.  Statement of Facts.

Milton challenges two disciplinary hearings resulting from two separate incident reports.  Milton received the first incident report on August 1, 2002, Incident Report No. 1015142, which charged him with the offense of "Use of the Telephone for Abuses other than Criminal Activity" in violation of Code 397 of the Bureau of Prisons ("BOP") disciplinary code.[2]  (Doc. 21-2, p. 9).  During the course of a telephone conversation, Milton requested a third party contact which infringed on the ability of staff to properly monitor his telephone usage.  A Unit Disciplinary Hearing ("UDC") was held on August 2, 2002, and the matter was referred to the Disciplinary Hearing Officer. ("DHO").  The DHO indicates that prior to conducting the August 21, 2002 hearing, he was satisfied that Milton received twenty-four hours notice of the charge.  Further, although he requested no witnesses, he had the assistance of a staff representative.  He was advised of his rights

---

[2] Complete records of this incident report are no longer maintained by the BOP due to the fact that the incident report was expunged from Milton's prison discipline record.  However, copies of the DHO report and the notice of expungement have been provided to the Court.

before the hearing and indicated that he understood them.  (Doc. 21-2, p. 9).

In arriving at a determination of guilty, the DHO found that the inmate telephone call records dated July 31, 2002, corroborated the information contained in the incident report.  Further, despite Milton's denial of guilt, the DHO found that "Milton clearly, based upon Officer Eder's description and Milton's own testimony, requested his legitimately called party to contact a third.  As such, the requested third party contact was a 'plan' for contact and was not known to have been effectuated. . . . After consideration of evidence . . .  the DHO has drawn the conclusion the greater weight of the evidence . . . supports the finding Milton . . .  committed the prohibited act of Use of the Telephone for Abuses Other than Criminal Activity, Code 397(A), on July 31, 2002 . . . "  (Doc. 21-2, p. 11).  Milton was sanctioned with disallowance of thirty days of good conduct time and three months loss of telephone privileges.  (*Id*.).

Milton successfully challenged the DHO's decision on appeal in that the Administrator for the National Inmate Appeals found it necessary to remand the case to the institution for reconsideration of the evidence. (Doc. 26, p. 17).  The DHO then informed Milton on June 16, 2003, that "[u]pon further review of the evidence, it has been determined no prohibited act was committed.  With this, Incident Report 1015142 has been expunged from your inmate discipline record.  Further, the 13 days of Disallowed Good Conduct Time will get re-credited to your current sentence computation."  (Doc. 21-2, p. 12).

The second incident report, 1142542, which was issued on September 12, 2003, charged Milton with stealing food from Food Service in violation of Code 219 of the BOP disciplinary code.  On September 15, 2003, he was notified by the UDC that the violation was being referred to the DHO for a hearing,  (Doc. 21-2, p. 14).  At that time, he was provided with an "Inmates Rights at Disciplinary Hearing" form, which he signed. (*Id*. at p. 13).

The hearing took place on September 23, 2003. Milton was advised of his rights, indicated that he understood them, and chose not to have a staff representative present or call any witnesses. In concluding that Milton was guilty of the charged offense, the DHO considered the information contained in the incident report which charged that Milton exited Food Service with a laundry bag which held a container with food in it. Also, there was inculpatory evidence in the form of a photograph of the container with the food taken from Food Service. Lastly, the DHO considered the statement of Milton that "I came from the unit. The bag was outside. You can't even bring bags inside the chow hall. It was all from the commissary." (Doc. 21-2, p. 16). He then sanctioned Milton to fifteen days disciplinary

segregation, which was suspended pending 180 days of clear conduct, and two months loss of commissary privileges.

III. Discussion.

While extreme limitations on the due process rights that arise from the Fourteenth Amendment have been imposed by the Supreme Court in *Sandin v. Connor*, 515 U.S. 472 (1995), the applicability of those protections to matters where an inmate is faced with the loss of good conduct time credit, as is the case with the disciplinary hearing conducted on Milton's first incident report, was left undisturbed. When an inmate is faced with the possibility of loss of good conduct time credits, due process requires that the prisoner receive: (1) written notice of the claimed violation at least twenty--four hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, (3) assistance from a representative, if the charged inmate is illiterate or if complex issues are involved, and (4) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564. It is clear from the

4

record that Milton received each of the above due process protections.  He received timely notice of the claimed violation, was given the opportunity to call witnesses and present documentary evidence, received assistance from a staff representative and was provided with a written statement by the DHO concerning the evidence relied upon and the reasons for imposing the sanctions he imposed.

In addition to the above factors, the disciplinary hearing officer's decision is required to be supported by "some evidence" in the record.  *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is any evidence in the record that could support the disciplinary hearing officer's conclusion.  *See Hill*, 472 U.S. at 454.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. . . . [No] other standard greater than some evidence applies in this context."  *Id*. at 455-56.

As stated above, Milton prevailed on his appeal and the matter was remanded back to the DHO for reconsideration of the evidence.  Subsequently, the DHO determined that no prohibited act was committed. Notably, the standard utilized by the DHO is the "greater weight of the evidence," not the "some evidence" standard of review applicable to court review of the DHO"s determination.  The evidence, as summarized by the Regional Director of Inmate Appeals, demonstrates that despite the remand back to the DHO for reconsideration of the evidence, there was clearly "some evidence" to support the DHO's decision.  The Regional Director stated as follows:

On August 8, 2002, while reviewing a prerecorded call placed by you, the reporting officer

heard you instruct the person you called to write down a number and call the number and relay a message on your behalf.  The DHO also considered the telephone call and detail records.  You contend the DHO's decision is not supported by the evidence and Code 397 does not provide sufficient notice your actions were prohibited.  You admitted to the DHO that you made the call.  You stated the number was on your approved list but you could not get through.  You told the DHO that the incident report did not give you fair warning of your alleged behavior.  The DHO noted that Section 11 of the incident report details the call and states that inmates are not authorized to have others place calls on their behalf.  Clearly you requested the person you called to place a call and relay a message on your behalf.  This behavior is prohibited and circumvents telephone monitoring procedures.  The DHO advised you that your actions infringed upon staff's ability to properly monitor your telephone use.  The DHO reviewed the evidence presented, and reasonably determined your behavior was accurately summarized as Code 397A.  Code 397 is titled as the Use of the Telephone for Abuses other than Criminal Activity. Circumventing telephone monitoring procedures is an abuse of the inmate telephone system.  Although you feel the sanctions are unwarranted, Program Statement 5270.01, Inmate Discipline and Special Housing Units, authorizes the DHO to impose those sanctions the DHO determines will have a significant impact upon an inmate's future behavior.  The DHO is authorized to impose any sanction A through N for each moderate category offense committed.  You were sanctioned in compliance with policy.

(Doc. 26, p. 11).  Based on the foregoing, the court finds that there was "some evidence" to support the

DHO's decision.  Thus, Defendants are entitled to an entry of summary judgment with respect to this claim.

Milton fares not better on the second incident report.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the

Supreme Court was presented with the procedural due process claims of a state prisoner who had been found

guilty of misconduct and sentenced to thirty days in disciplinary segregation. The Court rejected plaintiff

Conner's argument that "any state action taken for a punitive reason encroaches upon a liberty interest under

the Due Process Clause even in the absence of any state regulation." *Id*. at 484. The Court reasoned, *inter*

*alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an

inmate's sentence. *Id*. at 485. The nature of plaintiff Conner's confinement in disciplinary segregation was found

similar to that of inmates in administrative segregation and protective custody at his prison. *Id*. at 486. Focusing

on the nature of the punishment instead of on the words of any regulation, the Court held that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. The Court examined the nature of Conner's disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." *Id*.

In the instant matter, Milton was sanctioned fifteen days disciplinary segregation, which was suspended pending 180 days of clear conduct, and two months loss of commissary privileges. Case law has held that periods of time of several months to a year in disciplinary confinement did not violate a protected liberty interest under *Sandin*. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *Griffin v. Vaughn*, 112 F.3d 703, 706-708 (3d Cir. 1997). Based on the sanctions imposed, the court concludes that it was not of the magnitude or duration to set forth a constitutional violation under *Sandin* constituting an atypical and significant hardship giving rise to a liberty interest. As such, it was not necessary to afford Milton the *Wolff* due process protections. Defendants are entitled to an entry of summary judgment on this claim.

IV. Order

**AND NOW**, this 31st day of August 2005, in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. 20) is GRANTED;

2. The Clerk of Court is directed to ENTER JUDGMENT in favor of Defendants and against Plaintiff;

3. The Clerk of Court is further directed to CLOSE this case;

4. Any appeal taken from this Order will be deemed frivolous, lacking in good faith and without probable cause

      S/ Yvette Kane

Yvette Kane
United States District Judge