**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GREGORY MILTON,** | : | CIVIL NO. 1:CV-04-1586 |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **M.E. RAY, ET AL.,** | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

Plaintiff, Gregory Milton ("Milton") commenced this <u>Bivens</u>[1] civil rights action on July 21, 2004. (Doc. 1). On August 26, 2004, Milton filed an amended complaint (Doc. 7). Presently ripe for disposition is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Doc. 43). For the reasons set forth below, the motion will be granted.

**I. Procedural Background**

On August 31, 2005, the court issued a memorandum and order that granted defendants' motion for summary judgment, entered judgment in favor of defendants and against plaintiff, and closed the case. (Doc. 29). Plaintiff filed a timely motion pursuant to FED. R. CIV. P. 60(b)(6), which resulted in the amendment of the August 31, 2005 memorandum and order. Specifically, the court deferred entry of judgment and reopened the case to allow consideration of plaintiff's "fair notice and freedom of speech" claims "associated with his alleged violation of Federal B[ureau] O[f] P[risons] disciplinary regulations[,] i.e., Prohibited Act Code (PAC) 397." (Doc. 40). Defendants seek the entry of summary judgment on these claims. (Doc. 43).

**II. Standard of Review**

A motion for summary judgment may not be granted unless the moving party is entitled to

---

[1] <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

judgment as a matter of law. FED.R.CIV P 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. FED.R.CIV P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-694 (3d Cir. 1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. Forms, Inc. v. American Standard, Inc., 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id., (quoting Gans v. Mundy, 762 F.2d 338, 340 (3d Cir. 1985)); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).

### III. Statement of Facts

At all relevant times, Milton was incarcerated at the United States Penitentiary at Allenwood, White Deer, Pennsylvania. During the course of a telephone conversation, Milton requested a third party contact which allegedly infringed on the ability of staff to properly monitor his telephone usage. Following an investigation by defendant Flanagan, defendant Eder wrote Incident Report No.

1015142, which was received by Milton on August 1, 2002, for "Use of the Telephone for Abuses other than Criminal Activity" in violation of Code 397 of the Bureau of Prisons ("BOP") disciplinary code.[2]  (Doc. 44-3, p. 36).  A Unit Disciplinary Hearing ("UDC") was held by defendants Gallick and Kaminski on August 2, 2002, and the matter was referred to Disciplinary Hearing Officer Cerney.  ("DHO").  At the hearing, Milton had the assistance of defendant Stevenson, a staff representative.  DHO Cerney found Milton guilty and sanctioned him with a loss of thirty days of good conduct time and three months loss of telephone privileges.  (Doc. 44-3, p. 41).

Milton filed an appeal raising, *inter alia*, claims of denial of fair notice and free speech. (Doc. 44-3, p. 30).  His appeal was denied by Regional Director, defendant Ray.  (Id. at p. 28).  After three failed attempts to appeal the Regional Director's decision to the BOP Central Office, on January 2, 2003, Milton's appeal was accepted for review.  (Declaration of Joseph McCluskey ("McCluskey Declaration"), Doc. 44-3, p. 6, ¶ 13; Doc. 44-3, pp. 34-35).  Although he raised the issue of fair notice in the appeal, he did not include his free speech claim.  Milton's appeal was successful in that the matter was remanded to the institution for reconsideration of the evidence. (Doc. 44-3, p. 32).  The DHO then informed Milton on June 16, 2003, that "[u]pon further review of the evidence, it has been determined no prohibited act was committed.  With this, Incident Report 1015142 has been expunged from your inmate discipline record.  Further, the 13 days of Disallowed Good Conduct Time will get re-credited to your current sentence computation."  (Doc. 44-3, p. 38).

Inmates may challenge any aspect of his or her confinement using the BOP's administrative

---

[2] Complete records of this incident report are no longer maintained by the BOP because the incident report was expunged from Milton's prison discipline record.  However, copies of the DHO report and the notice of expungement have been provided to the Court.

remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*.  Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined.  Id. at §542.14(a).  If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP.  Id. at §§542.15(a) and 542.18.  No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.

Although Milton pursued an appeal of his misconduct hearing, review of the computerized index of all formal administrative requests and appeals filed by Milton revealed that he "never filed an administrative remedy claiming that his right to freedom of speech was violated during the disciplinary process for a telephone abuse charge.  He also never filed an administrative remedy claiming that his freedom of speech rights were violated because he was not allowed to say whatever he wanted during a conversation on the telephone."  (McCluskey Declaration, Doc. 44-3, p. 7, ¶¶ 8, 15).

**IV. Discussion**

    A. Freedom of Speech Claim

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follow:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis, 204 F.3d at 71.  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 2386.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  Id. at   2387 (quoting Nussle, 534 U.S. at 525)).

Although Milton raised his free speech claim at the initial level of review of the disciplinary hearing process, he failed to present this issue in his final appeal.  He also failed to present the issue through the administrative remedy review system.  Consequently, he has failed to exhaust his administrative remedies with respect to this claim.

  B.  Fair Notice Claim

Milton claims that Code 397, which identifies the prohibited act of Use of the Telephone for

Abuses other than Criminal Activity, did not give him fair notice that the conduct he was engaged in was prohibited. Significantly, on remand, the disciplinary hearing officer found that "upon further review of the evidence, it has been determined no prohibited act was committed." (Doc. 50-2, p. 17). Because there is no prohibited conduct of which Milton was not given fair notice and his claim is without merit.

Inasmuch as Milton's argument can be construed as challenging the code violation as unconstitutionally vague because it did not provide fair notice, this argument fails. "It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). In the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." Meyers v. Aldredge, 492 F.2d 296, 310 (3d Cir. 1974). Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration." Id. at 311. "Because 'legalistic wrangling' over the meaning of prison rules 'may visibly undermine the [prison] administration's position of total authority,' federal courts have deferred to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'" Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir.1983) (quoting Meyers, 492 F.2d at 311).

Code 397 prohibits use of the telephone for abuses other than criminal activity (e.g., conference calling, possession and/or use of another inmate's PIN number, three-way calling, providing false information for preparation of a telephone list)." See 28 C.F.R. § 541.13 Table 3. There can be no doubt that the language of the Code section is sufficient to provide "fair notice" to

an inmate concerning prohibited uses of the phone.

**V. Order**

    **AND NOW**, this 25th day of April 2007, it is hereby **ORDERED** that:

    1. Defendants' motion for summary judgment (Doc. 43) is GRANTED.

    2. The Clerk of Court is directed to ENTER JUDGMENT in favor of defendants and against plaintiff on all claims.[3]

    3. The Clerk of Court is further directed to CLOSE this case;

    4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                                    s/ Yvette Kane
                                                    Yvette Kane, Chief Judge
                                                    United States District Judge

---

[3]As noted above, entry of judgment was deferred on all other claims brought by Milton. (Doc. 40).  Judgment is to be entered on all claims.